IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION | : | |
| | : | Civil Action No. 08-1100 |
| | : | (RBW) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT OF | : | |
| HOMELAND SECURITY, et al. | : | |
| | : | : |
| Defendants. | : | |

**DECLARATION OF JAMES W. MCNEELY**

I, James W. McNeely, declare the following to be a true and correct statement of facts:

1)	I am an attorney-advisor in the Office of General Counsel, assigned to the Office for Civil Rights and Civil Liberties (CRCL), U.S. Department of Homeland Security (DHS), and have been licensed to practice law in the State of New York since 2001. I also serve as CRCL's Freedom of Information Act Officer. In this capacity, I have direct oversight of the preparation of responses to FOIA/Privacy Act requests, oversight of CRCL's compliance with Departmental policies and procedures for handling such requests, and assisting CRCL and the Department in litigation involving CRCL records.

2)	I am personally familiar with the facts and circumstances surrounding the CRCL's handling of the FOIA request of the above-captioned Plaintiff, American Civil Liberties Union (hereinafter referred to as "Plaintiff"). The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith. If called as a witness, I could testify competently as to the facts set forth in this declaration.

3)	CRCL is submitting this declaration in compliance with the parties' Joint Report to the Court, dated December 5, 2008. Pursuant to the terms of this report, CRCL is providing the court and Plaintiff with the following: (1) an explanation of the search effort CRCL conducted to determine the location of any and all records in response to Plaintiff's FOIA request; (2) an explanation of the procedures used in the review and processing of CRCL records; (3) an explanation of how CRCL conducts investigations and its status within the Department insofar as relevant to disclosure of documents under the FOIA; and, (4) justification for withholding from disclosure, in part or in whole,

CRCL records pursuant to FOIA Exemptions 2(High), 5, 6, 7(A), 7(C), and 7(E). 5 U.S.C. § 552 (b)(2), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(E).

## Procedural Background and Records Processing

4) By letter dated June 27, 2007, Plaintiff submitted a FOIA request to DHS[1]. (Exhibit 1) Plaintiff sought access to six enumerated items. The first two items sought certain information regarding individuals who died while detained in Immigration and Customs Enforcement (ICE) custody since January 1, 2004[2]. Items three through five sought written correspondence, policies, guidelines, and the manner ICE tracks deaths in detention. Plaintiff's last item sought all records "generated in response to requests for information from the Washington Post and the New York Times about immigrant detainee medical care and deaths, and in reaction to those articles."

5) The original FOIA request was not directed to CRCL. CRCL first became aware of the request, and the possibility that it might have responsive documents, when the DHS Office of Inspector General (OIG) discovered documents generated by CRCL and referred them to CRCL for direct response to Plaintiff in three separate communications sent to CRCL in August, September and November 2008.

6) In late September, I reviewed in detail the initial FOIA request, and made inquiries within CRCL to determine if CRCL possessed any other potentially responsive records in addition to the documents sent to us by the OIG. I was informed that a search of the CRCL complaints database, CRCL Matters, for the key words "death," "die," or "died"

---

[1] The FOIA request is addressed to three entities, one of which was the Department of Homeland Security Privacy Office.
[2] OIG is summarizing the information plaintiff is requesting in this paragraph; however, a list of documents requested is typed verbatim under paragraph 14 of this declaration. For a complete and accurate statement of the items requested, OIG also refers the Court to OIG Exhibit 1 attached to this declaration.

found those words in 15 separate records of complaints reported to CRCL. Additionally, CRCL investigators indicated that two or three of the complaints involving deaths in detention had been investigated by the Office, and would have voluminous case files and database records.

7) Between September 24, 2008 and October 29, 2008, I worked with the DHS Privacy Office and with Assistant U.S. Attorney, Ms. Marina Braswell to clarify the exact scope of the search required within CRCL. Following discussions with Plaintiff and Ms. Braswell, a more detailed search of CRCL records was conducted to ascertain the exact extent of potentially responsive records that might be found.

8) With the assistance of CRCL investigators, I determined that ten of the 15 records initially surfaced did not pertain to actual deaths in ICE custody, while five complaints and investigative files did pertain to deaths in ICE custody. We further determined that CRCL had substantive involvement in the investigation of two of the five complaints.

9) An agreement was reached with Plaintiff by November 7, 2008, limiting the records to be located and searched to the two complaints actually handled by CRCL. One complaint was investigated by CRCL, and the other complaint was held open within CRCL as a referred matter, while ICE investigated the incident.

10) Initial searches of CRCL Matters database for all records relating to the two complaints were initiated during the second week of November, 2008. From records contained within the database, a list of individuals reasonably likely to have email communications, electronic or hard copy documents, or other responsive records in their possession was generated. A search of the CRCL Executive Secretary account for

responsive documents was conducted and the hard copy case files were copied and searched as well.

11) A broader search of individual records, based on information found in the CRCL Matters complaint database, was initiated on December 4, 2008. Individuals thought to be in possession of responsive records were directed, in writing, to search "email, current and archived" and to also produce "any documents that you are aware of which pertain to the two cases. . ." A copy of the FOIA request was attached to the email. The individuals tasked to search reported to me that they had conducted a search of their records, or that they had supervised subordinates in a search of their records, for any documents or other media responsive to the request. I was assisted in this task by three CRCL employees acting under my direction and supervision. The search for records in possession of current CRCL employees was substantially completed by December 15, 2008. The email archives of several former employees were not available to be searched. According to representatives of the Chief Information Officer, the tape backup system on which those records might have been archived was not functioning properly and had not been operable for several months at the time of the search and immediately thereafter. It is unlikely, however, that significant records escaped the search efforts. CRCL investigations are extensively coordinated within CRCL, and the key supervisors directing the investigations are copied on all significant communications and most routine coordination communications. All significant documents and many routine documents are uploaded into the complaint database. The hard copy of the investigative file was also available to search, which is a collection of all significant documents, many

routine documents, and materials such as investigative notes, was also searched. The key supervisors are still working at CRCL and made their records available for this search.

12) This detailed and comprehensive search for responsive records revealed 182 pages of potentially responsive documents in the open investigative file of the matter referred to ICE for investigation, Matter No. 08-11-ICE-150 as of the date the searches were completed. There were over 4,500 pages of potentially responsive documents relating to the closed complaint that was retained and investigated by CRCL, Matter No. 06-10-ICE-0087. Initial processing of the approximately 4,500 pages of potentially responsive documents in the closed matter permitted the elimination of copies of identical documents[3] and reduced the total number of potentially responsive pages to 1359.

13) CRCL prepared an interim final response to Plaintiff in a letter dated December 19, 2008. In that letter CRCL informed Plaintiff that as of the date the search was complete, 182 pages comprising the open complaint investigative file in Matter No. 08-11-ICE-150 were being withheld pursuant to Exemption 7(A). Other exemptions, applicable to the open investigative file include 2(High), 5 (deliberative process privilege and attorney client privilege), 6, 7(C) and 7(E), which are asserted as to specific documents as per the attached *Vaughn* index. (Exhibit 2) Additionally, 21 pages relating to the closed investigative file of Matter No. 06-10-ICE-0087 were released to Plaintiff in their entirety, 24 pages of documents originating in OIG were referred to OIG for direct response to Plaintiff, and 124 pages originating in ICE were referred to ICE for direct response to Plaintiff.

---

[3] Where documents were identical, mere copies were not processed. Where emails were substantially the same but for the "to," "from," and "cc" addressees, duplicates were discarded. Where the final email in an email chain contained all prior emails, only the last email was retained for evaluation as a potentially responsive record. This method was reasonably calculated to yield all potentially responsive documents while minimizing waste of government resources.

14) In the course of further processing of responsive documents in preparation of a *Vaughn* index, CRCL determined that an additional 440 pages of email communications could be released in part. CRCL provided a final response to Plaintiff in a letter dated February 5, 2009, releasing the 440 pages with portions withheld pursuant to exemptions Exemptions 2(High), 5(deliberative process privilege and attorney client privilege), 6, 7(C) and 7(E).

### CRCL Background and Investigations

15) The Office for Civil Rights and Civil Liberties is directed by 6 U.S.C. § 345 and 42 U.S.C. 2000ee-1 to ensure that civil rights and civil liberties are appropriately considered in DHS activities. CRCL is divided into two parts: Equal Employment Opportunity Programs (EEO Program), and CRCL Programs and Compliance. The EEO Program adjudicates employment discrimination complaints and manages the DHS programs ensuring non-discrimination in employment, while CRCL Programs and Compliance provides policy advice to DHS elements to ensure that Department incorporates protections for individual civil rights and civil liberties.

16) CRCL Programs and Compliance is itself divided into two sections, CRCL Programs, and CRCL Review and Compliance. Both sections carry out the Office' primary mission, which is to "assist the Secretary, directorates, and offices of the Department to develop, implement, and periodically review Department policies and procedures to ensure that the protection of civil rights and civil liberties is appropriately incorporated into Department programs and activities." 6 U.S.C. § 345(a)(3). Comparable authorities in 42 U.S.C. § 2000ee-1 require the Office to advise the Department on how best to protect civil rights and civil liberties in all DHS activities.

CRCL Programs and Compliance provides policy advice to DHS elements by examining DHS activities.

17)  These evaluations may be conducted in a top-down manner by CRCL Programs, or through bottom-up review based on investigations of individual complaints made to CRCL Review and Compliance.

18)  The authority for CRCL Review and Compliance investigations is provided by 6 U.S.C. § 345, which directs CRCL to:

- review and assess information concerning abuses of civil rights [and] civil liberties [...] by employees and officials of the Department

- investigate complaints and information indicating possible abuses of civil rights or civil liberties

6 U.S.C. § 345(a)(1), (6). See also 42 U.S.C. § 2000ee-1(a)(providing for similar, but more expansive authorities).

19)  CRCL Review and Compliance investigations are guided by the criteria specified in 42 U.S.C. s 2000ee-1(a)(4) and other relevant considerations. Where Review and Compliance determines that the Department could do a better job of protecting individual rights, Review and Compliance offers candid opinions on how it might be done.

20)  Referred matters are complaints received by CRCL Review and Compliance, but referred to other DHS elements for initial investigation. Review and Compliance may only ask for notification when the DHS component resolves the complaint, or it may ask for a copy of the final report, and additional information about the investigation and resolution. The heightened scrutiny applied to referred matters provides a basis to ensure DHS elements are addressing civil rights and civil liberties concerns, and further provides

a basis for Review and Compliance to offer the element policy suggestions for improving its investigative processes. Retained matters are those complaints CRCL Review and Compliance investigates. Such investigations may be conducted by CRCL alone, or concurrently with other investigative elements (such as OIG) who may have criminal or civil enforcement interests falling outside of CRCL jurisdiction.

21) When investigating allegations of civil rights or civil liberties abuses, CRCL Review and Compliance typically conducts a factual investigation into the incident, as well as an inquiry into the legal and policy context in which it occurred. Because policy development is the primary purpose of the investigation, a detailed inquiry is made into the legal implications of the allegations, and into component regulations, policies and practices. Line personnel, managers, leaders, and subject matter experts are often consulted during the inquiry to provide candid opinions about the allegations, and how policy might be improved.

22) Attorneys acting under the supervision of the Office of General Counsel, but embedded within CRCL, provide legal opinions on the underlying substantive legal issues, and advise Review and Compliance personnel in the conduct of legally sensitive portions of investigations.

23) The investigative techniques used by Review and Compliance include interviews, document review, reviews of legal and policy positions, records checks conducted with the assistance of other agencies, and other investigative activities as appropriate. Coordination with other DHS investigative elements is common. CRCL program analysts (who normally conduct the Review and Compliance investigations) may

accompany sworn law enforcement officers and assist in joint interviews of persons of interest to the investigation.

24) The Department is required under 42 U.S.C. § 2000ee-1(d)(4) to ensure that CRCL "is given access to material and personnel the officer determines to be necessary to carry out the functions of such officer."

25) Because the goal of Review and Compliance investigations is to improve the Department's policies and the implementation of those policies, Review and Compliance frequently requests and receives material which would be legally privileged against disclosure in civil litigation, such as records of pre-decisional deliberations, legal opinions, and other privileged materials necessary to determine why the agency took a particular action. Review and Compliance personnel also participate in discussions with DHS components relating to ongoing pre-decisional deliberations relevant to complainant allegations. The material may also include the mental impressions and opinions, including speculation, hypothetical discussions and other pre-decisional deliberations provided by operational DHS personnel, management, experts and counsel.

26) The exchange of information and opinions described in paragraphs 20 - 24 *supra* is conducted to obtain candid opinions on how DHS policy and practices might be improved. Review and Compliance personnel have expertise in their own fields, but rely on the willingness of DHS personnel interviewed and consulted, as well as other experts, to formulate workable policy suggestions that would improve the Department's civil liberties posture. Because these discussions are legally privileged, the individuals assisting Review and Compliance are free to speak their minds, providing immeasurable assistance to CRCL in this process.

27) Upon completion of the investigative phase of an investigation, Review and Compliance draws conclusions about the facts, determines whether the initial allegations were substantiated, and if appropriate makes policy recommendations to the affected DHS component. This information is provided to the component in a final report containing facts found, a legal discussion and policy recommendations. Depending on the nature of the allegations investigated, policy deliberations may occur between CRCL, the component and their legal counsel prior to issuance of the final report, or in subsequent communications and deliberations.

28) The Office has no statutory basis under 6 U.S.C. 345 or 42 U.S.C. 2000ee-1 for granting relief to individuals. Accordingly, when Review and Compliance retains a complaint, complainants are informed in writing that "no legal or procedural rights or remedies are provided to individuals" as a result of this internal process. Furthermore, complainants are informed that "if you believe your legal rights have been violated, you may wish to consult with an attorney of your choosing."

29) Similarly, upon completion of an investigation, complainants are sent a letter notifying them of closure of the investigation. They are informed if the investigation resulted in a final report regarding their allegations, and if so they are also informed that the report itself is a privileged internal DHS communication and not subject to disclosure. Where feasible, the closure letter may discuss a Departmental policy change that has occurred in the wake of the investigation, that a policy change was made as a result of their complaint (without providing further details), or that policy recommendations were made as a result of the investigation. Care is taken to preserve those privileges that exist to protect the Department's legal and policy deliberations, and operational security.

30)    Although the provision of legally privileged materials to CRCL by DHS personnel may at times be compelled by 42 U.S.C. § 2000ee-1(d)(4), the candid exchange of opinions that Review and Compliance requires in order to formulate workable, effective policy recommendations would, in CRCL's opinion, be severely chilled if CRCL was unable to shield such materials from disclosure. Although the Office would still be able to obtain documents and ask questions of DHS personnel per 42 U.S.C. 2000ee-1(d)(4), and would still be able to make recommendations to DHS leadership, CRCL would not be able to participate in fruitful, internal DHS policy debates or to engage in vigorous back-and-forth exchanges over thorny policy problems with DHS elements. The Office' inability to shield forthright legal and policy discussions regarding DHS policies and activities would do the Office great harm in its role as a policy advisor on civil liberties issues.

## Justification for Withholding Portions or All of Certain Documents

31)    Certain documents are withheld in whole or in part pursuant to 5 U.S.C. § 552 (b)(2), Exemption 2(High). Exemption 2 is cited to protect information relating to the conduct of internal administrative matters relating to the procedures by which CRCL Review and Compliance conducts internal investigations of alleged abuses of civil rights and civil liberties by DHS personnel. Whether there is any public interest in disclosure of this information is legally irrelevant under 5 U.S.C. § 552(b)(2); rather, the concern is that disclosure should not benefit those attempting to violate the law and avoid detection.

32)    The records withheld pursuant to Exemption 2(High) include direct discussions of the procedures used by CRCL Review and Compliance to conduct investigations, and also candid discussions of difficulties occurring in investigations which reveal the

limitations of CRCL procedures. Disclosure of these discussions could provide a roadmap that permits those under investigation to thwart the CRCL investigative efforts. Because disclosure of these records could assist those alleged to have violated civil rights and civil liberties laws of evading detection and accountability, these records must be withheld.

33) Certain documents are withheld in whole or in part pursuant to 5 U.S.C. §552 (b)(5), Exemption 5, deliberative process privilege. The deliberative process privilege protects the integrity of the deliberative or decision-making processes by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda or letters. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel.

34) Some materials withheld under Exemption 5 (deliberative process privilege) concern purely internal deliberations within CRCL contemplating how best to proceed in the investigation, what conclusions to draw and what advice to give. This may include the assumption of facts that may or may not be borne out after the investigation, weighing various investigative options, and taking into account CRCL and DHS policy considerations. Other documents labeled as deliberative include debates between the investigators about the underlying facts of the allegations, and suggestions of what conclusions should be drawn and what policy recommendations should be made. Other materials withheld pursuant to this exemption include discussions between ICE and CRCL concerning how the investigation should proceed, opinions and mental

impressions of how operational realities may affect investigative plans, and vigorous back-and-forth exchanges regarding existing policies and proposals for future policies.

35) The final report, including the findings upon which it relies and policy recommendations, is also withheld pursuant to this Exemption. The report, although it is characterized as CRCL's final findings and recommendations, is pre-decisional within DHS because it gives advice on what steps the Department or its component agencies should take in the future. The final decision to act is made by the secretary or designee, who is free to disregard the advice given. The fact finding and exploration of legal and policy issues encompassed in the final report are conducted to provide the Department a candid critique of its performance with respect to civil rights and civil liberties, and to provide useful policy advice as to how it might improve. Although CRCL can compel production of documents and individuals needed for investigations pursuant to 42 U.S.C. § 2000ee-1(d) and can make recommendations, DHS elements regularly go well beyond what is required in the statute and often afford CRCL access to internal policy deliberations, and the quality of CRCL's reports and recommendations reflect this. This interchange is necessary because DHS agencies charged with operational duties generally have a better grasp on realities within their area of expertise than investigators from other agencies will have, and are able to help CRCL craft its advice to ensure it is feasible and useful, and therefore more likely to be heeded by decision makers.

36) CRCL believes that if it cannot protect from disclosure the materials it discovers by virtue of its position, that agencies would provide facts and make people available for interviews only to the extent required by statute. Given the extremely broad access to DHS documents compelled by 42 U.S.C. § 2000ee-1, the final reports of the Office could

become a conduit for private litigants to breach DHS legal privileges and obtain access to documents that are otherwise privileged and withheld from disclosure for a range of valid legal and public policy reasons.

37)     Certain documents are withheld in whole or in part pursuant to 5 U.S.C. §552 (b)(5), Exemption 5, attorney-client privilege. The attorney-client privilege protects confidential communications between attorney and client relating to a legal matter for which the client has sought professional advice. It applies to facts divulged by a client to the attorney, and encompasses any opinions given by an attorney to the client based upon and thus reflecting those facts, as well as communications between attorneys that reflect client-supplied information. The attorney-client privilege is not limited to the context of litigation.

38)     Materials withheld pursuant to 5 U.S.C. § 552(b)(5), Exemption 5(attorney client privilege) include discussions of a legal nature between DHS personnel and DHS attorneys relating to the conduct of the investigation, policy formulation and final recommendations, as well as discussions of ongoing litigation and legal aspects of DHS business processes. Because all attorneys within DHS are under the supervision of the DHS Office of General Counsel, the discussions between the attorneys and DHS personnel assisting in this investigation comprise attorney-client communications, and should be exempt from disclosure. The materials over which the privilege is asserted were shared between DHS attorneys supporting ICE and CRCL, and the counseled clients, a handful of DHS personnel consisting of CRCL investigators charged with investigating the allegations, and ICE personnel charged with assisting CRCL in the investigation. Legal advice provided by DHS attorneys to DHS clients, and

communications by DHS clients seeking legal advice from DHS attorneys, were not shared with third parties outside of DHS.

39) The relationship between DHS attorneys and the DHS clients is at times complex. DHS attorneys embedded with CRCL have a dual role in CRCL investigations, as do the DHS attorneys who support components under investigation by CRCL. When CRCL conducts an investigation or offers advice to a component, a CRCL attorney advises CRCL on how to conduct its investigation, while also providing specialized legal advice to component legal counsel, on an as-needed basis, on civil rights and civil liberties laws that may apply to the investigation and final recommendations. At the same time, component legal counsel advises its component clients on how to assist the CRCL investigation in a manner consistent with applicable laws, while also advising CRCL investigators and policy advisors, on an as-needed basis, on component-specific legal issues. Because the DHS Office of General Counsel functions like a law firm for the Department, the corporate attorney-client relationship extends between any DHS employees, acting in their official capacity, seeking legal counsel from any member of the Office of General Counsel.

40) The attorney client privilege is asserted in particular with respect to the final report from CRCL to ICE, as that report was prepared under the supervision of counsel assigned to CRCL, and it contains legal analysis relating to the underlying allegations, and mixed legal and policy advice offered to ICE. It was sent jointly from the Officer for Civil Rights and Civil Liberties and the then-Acting Chief Counsel for Civil Rights and Civil Liberties to the Assistant Secretary for ICE and the ICE Office of Principle Legal Advisor. That report is a final report not in the sense of an administrative agency's final

administrative action, but final in the sense that CRCL has completed its policy and legal deliberations, and then submits suggestions, which are generally a mix of legal and policy advice, to DHS for the Department's consideration. The Secretary or the Secretary's designee, usually a DHS component or element head, is free to accept or decline that advice. Individuals are in fact notified at the start of CRCL investigations that CRCL's role does not include providing specific relief to complainants. Complainants are informed at the end of investigations that the investigation was completed, and possibly informed that policy recommendations were made to the relevant component, but that the results of the investigation and the policy advice are internal matters subject to legal privileges.

41) Certain documents are withheld in whole or in part pursuant to 5 U.S.C. §552 (b)(6), Exemption 6, which exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy, and it would not shed any light on how the investigation was conducted. This requires a balancing of the public's right to disclosure against the individual's right privacy.

42) Records withheld in full or in part pursuant to Exemption 6 include privacy information of complainant (including identifying information and medical records pertaining to plaintiff and a family member), communications about complainant by next friends of complainant or counsel for complainant's estate containing private information relating to complainant's medical status, and identifying data of family members who are not public persons. Many of the essential details of complainant's story have been reported in the newspapers and discussed publicly by advocacy groups. Disclosure of

private details which have not been publicly disclosed by complainant, some of them potentially embarrassing to complainant or complainant's family, would be an clearly unwarranted invasion of personal privacy. ,The names, email addresses and phone numbers and other data tending to identify non-public DHS personnel and third parties appearing in the records have also been withheld because the public interest in the identities of rank and file personnel is low compared to the individuals' privacy interests. Disclosure of their personal identifying information would be an clearly unwarranted invasion of privacy because it would invade the individual's privacy while not conveying any meaningful information to the public about how this investigation was conducted.

43)     Certain records are withheld in part pursuant to 5 U.S.C. § 552(b)(7)(C), Exemption 7(C), which protects from disclosure records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. CRCL Review and Compliance investigative personnel and ICE personnel, along with witnesses interviewed in this investigation, have a strong interest of in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. The types of information withheld include names, addresses, phone and fax numbers, email addresses, and similar information that would tend to identify these individuals. Releasing this information to the public would not further public understanding of this investigation or how it was conducted, therefore it would be an unwarranted invasion of privacy.

44) Certain records are withheld in part pursuant to 5 U.S.C. § 552b(7)(E), Exemption 7(E), which protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. This information has not previously been made public. I determined that disclosure of records which revealed how CRCL Review and Compliance conducts investigations, and particularly those portions of the record which bluntly discuss weaknesses in Review and Compliance' abilities to use certain investigative methods, could reasonably be expected to risk circumvention of the laws protecting civil rights and civil liberties if disclosed to the public.

45) All materials contained in the CRCL record of Complaint No. 08-11-ICE-150, the referred matter currently in open investigative status at CRCL, are withheld in their entirety, pursuant to 5 U.S.C. § 552(b)(7)(A), which protects from disclosure records or information compiled for law enforcement purposes, the release of which could reasonably be expected to interfere with enforcement proceedings. The underlying allegations concern alleged abuse of civil rights or civil liberties by DHS personnel, resulting in the death of an ICE detainee. This complaint was referred to ICE for investigation of the underlying allegations, which included possible criminal activity, but is also an open investigation within CRCL, which is conducting an administrative investigation authorized by 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1, to ensure the underlying allegations are addressed, to conduct supplemental investigation of those allegations if necessary, to evaluate the sufficiency of ICE's investigative efforts, to hold

ICE accountable for ensuring the protection of civil rights and civil liberties, and to provide appropriate policy advice to ICE and the Department at the completion of the investigation. The contents of this investigative file have not been disclosed publicly. Disclosure at this stage could risk the accomplishment of any of the above-mentioned goals of this investigation. Therefore, I have withheld the materials in the open investigative file, all of which if disclosed prior to completion, could reasonably be expected to interfere with ongoing enforcement proceedings and final agency actions related to those proceedings. Plaintiff has been informed that once the investigation is completed, Plaintiff will be contacted and the records will be processed under FOIA at that time if the Plaintiff so desires. CRCL anticipates that the following exemptions would apply following closure of the investigation: 2(High), b(5)(attorney-client privilege, attorney work product and deliberative process privilege); b(6); b(7)(C); b(7)(E).

46) All reasonably segregable information has been released to the Plaintiff.

> I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.
>
> /James W. McNeely
>
> Date: 2/6/09