IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION | : | |
| | : | Civil Action No. 08-1100 |
| | : | (RBW) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT OF | : | |
| HOMELAND SECURITY, et al. | : | |
| | : | : |
| Defendants. | : | |

**SUPPLEMENTAL DECLARATION OF JAMES W. MCNEELY**

**IN RESPONSE TO PLAINTIFF'S LETTER OF MAY 7, 2009**

I, James W. McNeely, declare the following to be a true and correct statement of facts:

1. This supplemental declaration is in response to Plaintiff's letter of May 7, 2009 (Attachment 1) discussing the Office for Civil Rights and Civil Liberties' previous disclosures in response to Plaintiff's Freedom of Information Act (FOIA) request, formerly captioned: OIG FOIA 2007-246 Jawetz.

2. In the May 7th letter, provided as Attachment 1, Plaintiff questioned the withholding of certain documents, and requested that the Office for Civil Rights and Civil Liberties provide additional justification for withholding them beyond the justification originally provided in the *Vaughn* Index. Plaintiff further questioned the legibility of certain copied documents. A revised *Vaughn* Index is provided as Attachment 2, and this Declaration addresses each of the objections voiced by Plaintiff in the May 7th letter.

3. When the Department of Homeland Security (DHS) Office for Civil Rights and Civil Liberties investigates allegations of abuses of civil rights or civil liberties by DHS personnel, it is acting in the capacity of an internal policy advisory and oversight office. The Office is directed at 6 U.S.C. § 345(a)(3) to:

> Assist the Secretary, directorates, and offices of the Department to develop, implement, and periodically review Department policies and procedures to ensure that the protection of civil rights and civil liberties is appropriately incorporated into Department programs and activities. . .

Other portions of section 345 grant the Office authority to investigate allegations of abuses of civil rights and civil liberties. The Office's other authorizing statute, 42 U.S.C. § 2000ee-1, provides for a similar combination of advisory authority and investigative authority, but spells out two additional responsibilities. Under 42 U.S.C. § 2000ee-1(d)(1), agency heads are compelled to provide "the information, material, and resources necessary to fulfill the functions of such officer." This permits the Office to ask components for deliberative materials such as legal or policy opinions on how a policy or procedure might be improved or altered in the future; these materials are beyond the scope of traditional investigations into alleged misconduct. The statute also directs that the Officer shall "coordinate their activities with the Inspector General. . . to avoid duplication of effort." 42 U.S.C. § 2000ee-1(c)(2).

4. The combined effect of the Office's charter statutes is to create an investigative function that supports a purely internal process to provide DHS management with meaningful civil liberties oversight and useful policy advice. Although both the Office for Civil Rights and Civil Liberties and the Office of Inspector General may share jurisdiction over a particular incident, and although both offices serve an oversight function, they have divergent missions, emphases and work products. The Office of Inspector General typically makes an inquiry that is focused on the facts of an incident, and usually produces a final report that is also heavily fact-oriented, and which may find wrongdoing or not, and make some recommendations for remedies. That

report is often forwarded to Congress, may be made public, and may be used as the basis of criminal or civil enforcement action.

5.  In contrast, the capstone of the Office for Civil Rights and Civil Liberties process operated by the Office's Programs and Compliance Division is the Final Report and Recommendations, which is comprised of the Office's view of the underlying facts, a potentially wide-ranging discussion of the related legal and policy issues associated with the allegation, and legal and policy advice to DHS and component leadership on how to improve policies and procedures in the future. With the narrow exception of those few instances where the Office has enforcement authority (such as the Rehabilitation Act of 1973, or Title VI of the Civil Rights Act of 1964), the Final Report and Recommendations is advisory and deliberative in nature, and constitutes pre-decisional materials. Outside of the relatively rare enforcement cases, DHS and component leaders are ultimately free to accept or reject the Office's policy and legal advice.

6.  Thus the Final Report and Recommendations, and the majority of work product produced in developing that Report, are subject to FOIA exemptions protecting pre-decisional materials from disclosure, and much of it is also exempt from disclosure based on attorney-client privilege that is inherent in the role of the CRCL Office of Chief Counsel in providing legal advice and direction during the process.

7.  The Office for Civil Rights and Civil Liberties Final Report and Recommendations, CR 7246-1161 – CR 7246-1170, and the supporting Expert Report relating to a death in custody, CR 7246-3 – CR 7246-126.

Both reports are withheld in their entirety as deliberative products subject to Exemption 5(Deliberative Process Privilege). The Final Report and Recommendations, as noted above, comprises the Office's view of the underlying facts supporting the initial allegation, the Office's view of the applicable laws and regulations, and policy recommendations to ICE leadership on how they might improve the integration of civil rights and civil liberties in future ICE operations.

From time to time, the Office finds it necessary to retain bona fide experts in a given field, in this instance medical care in detention facilities, to assist in factfinding and offer candid opinions on DHS activities, and how those activities could be improved. The Expert Report in this instance is an integral report of the factfinding used to support the the Office's policy recommendations, and it additionally contains policy and procedural recommendations of its own. The process is less adversarial than a criminal investigation, and the Office is effective precisely because it can solicit opinions from DHS personnel on what went wrong and how to fix the problem. The Office in turn offers DHS and component leadership very candid recommendations on how to better integrate respect for individual rights in their agency's operations. Moreover, the Office's understanding of the facts as cited within the Final Report is the Office's opinion regarding the underlying allegations and associated facts for the purpose of policy criticism and development, not the Department's final position on what occurred – a legally relevant distinction because this particular matter has been the subject of litigation. If this deliberative material were disclosed, it would discourage DHS personnel from freely offering their unvarnished views to the Office for Civil Rights and Civil Liberties, and would impair the Office's ability to offer candid advice to DHS and component leadership. Both the Final Report and Recommendations and the Expert Report are withheld in their entirety because any potentially disclosable material is not reasonably segregable from the exempt portions associated with the deliberative process privilege. Exemption 6 and 7(C) are asserted as to personal identifying information contained within both reports because the personal identifying information associated with individuals discussed in the reports is of no public interest and releasing it would cause an unwarranted invasion of personal privacy, while disclosing their identities could subject them to unwarranted public attention by mere association with this investigation. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not

being unwarrantably associated with alleged illegal or abusive activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, whether of a criminal, civil or oversight nature, the withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. This is particularly true with respect to the Policy Analysts charged with conducting investigations, who are not public figures and whom the Office believes should be shielded from public pressure concerning investigations; and to individuals interviewed during the course of the investigation who could reasonably be expected to receive unwanted notoriety by the mere association of their names with the Office' investigation of serious allegations against ICE.

8.     Exemption 5(Attorney-Client Privilege) is also asserted as to the Office' Final Report and Recommendations, CR 7246-1161 – CR 7246-1170.

The Office' Final Report and Recommendations contains a mixture of legal and policy advice. It is jointly issued by the Officer for Civil Rights and Civil Liberties and the Office's Office of Chief Counsel, to the Assistant Secretary for U.S. Immigrations and Customs Enforcement (ICE), and the ICE Office of Principal Legal Advisor. The questions discussed in the Final Report and Recommendations are mixed questions of law and policy, and the legal discussion occurs between DHS attorneys (regardless of which element they are assigned to) and DHS clients (again regardless of their element). Breaching the attorney-client privilege in this context would discourage components from seeking advice from the Office's legal advisors and thwart the Office in its statutory duty to provide advice on civil rights and civil liberties issues, a role that necessarily entails providing legal advice.

9.     Case opening memorandum, CR 7246-483 - CR 7246-486.

This internal correspondence is jointly addressed from the Officer for Civil Rights and Civil Liberties and its Office of Chief Counsel, to ICE leadership and the ICE Office of Principal Legal Advisor. The document provides notice that an investigation is being opened, and states the Office's initial impressions of the facts alleged and a preliminary legal theory concerning those allegations. Because this is a communication of a legal nature between DHS attorneys and their clients, Exemption 5(Attorney-Client Privilege) applies. Because the substantive discussion in the memorandum is part of the factfinding process that supports the policy advisory process, Exemption 5(Deliberative Process Privilege) is also applicable. Exemption 2(High) is asserted because the document reflects internal agency procedure related to the investigation of alleged wrongdoing, and revealing that procedure would hinder the Office for Civil Rights and Civil Liberties' investigative proceedings in the future. The memorandum is withheld in its entirety because any potentially disclosable material is not reasonably segregable from the exempt portions.

10.     Investigative notes and requests for information from the Office for Civil Rights and Civil Liberties to ICE, including: CR 7246-556 - CR 7246-657; CR 7246-767- CR 7246-768; CR 7246-776 - CR 7246-777; CR 7246-804- CRC 7246-805.

These comprise the Office's inquiries during the factfinding portion of the complaint process, and the mental impressions of the Office's program analysts compiled during or shortly after interviews and records reviews, along with follow-up questions and other related communications. They are pre-decisional materials because they reflect the Office's concerns, theories, conjectures, and preliminary understanding of the facts at issue, not a final view of the underlying facts. In fact, these materials are also pre-decisional due to the fact that some of them comprise facts ultimately adopted in the Final Report and Recommendations, which itself is a pre-decisional, deliberative document. Failure to exempt these materials from disclosure would impair the candid exchange of information necessary for the Office to develop effective policy

recommendations in the future, hindering both the Office' ability to ask difficult questions, and the ability of DHS personnel to speak their minds freely, thus Exemption 5(Deliberative Process Privilege) is asserted. Exemption 7(C) is asserted to protect the privacy information of the individuals interviewed and the interviewers because associating them with the contents of an investigative file could unnecessarily compromise their privacy. Exemption 7(E) and in places Exemption 2(High) are asserted because although the Office's primary mission is not enforcement, it does have oversight duties and is part of a team of offices within DHS with the duty to hold DHS personnel accountable. Exemption 2(High) protects internal agency processes from disclosure to the extent they could reasonably be expected to be impaired. Exemption 7(E) protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. I determined that disclosure of the Office's methods for conducting these investigations could reasonably be expected to risk circumvention of the law and thwart the Office in its mission of ensuring civil rights and civil liberties oversight, particularly with respect to facts involving limitations in the Office' methods of factfinding. I further determined that to the extent any potentially disclosable material exists in these records, it is not reasonably segregable from the exempted materials.

11.     Press inquiry and talking points, CR 7246-731 - CR 7246-736; CR 7246-742. Exemption 5(Deliberative Process Privilege) is asserted to exempt from disclosure pre-decisional discussions within the Office regarding how to handle press inquiries related to decedent and the Office's investigation. This is a purely internal deliberative matter. At the time of these communications, no decision was made on how to respond, and a final agency action would consist of a press release or a discussion in a press conference. Until that point, no decision has

been made on what DHS will actually say about a topic, and release of these pre-decisional materials would hinder the ability of DHS employees to have a candid exchange of views regarding how to respond to such inquiries. Therefore Exemption 5(Deliberative Process Privilege) is asserted here. Any factual matter withheld here is inextricably intertwined with deliberative material. Exemption 2(High) is also asserted to protects information about internal administrative matters. The manner in which the Office responds to public inquiries is sensitive, and revealing the method in which public inquiries, including media inquiries, are evaluated, could make the Office' internal decision-making procedures susceptible to manipulation by outside pressure. This in turn would risk impeding the effectiveness of the Office' activities. Whether there is any public interest in disclosure is legally irrelevant. Rather, the concern under high 2 is that a FOIA disclosure should not benefit those who would attempting to violate the law and avoid detection by manipulating internal CRCL deliberative processes.

12.     Correspondence with complainant counsel, CR 7246-660 – CR 7246-716.
Exemption 6 is asserted to withhold correspondence and associated attachments from counsel for the estate or relatives of decedent, Christopher R. Walsh, 270 Grain Exchange North Building, 301 Fourth Avenue South, Minneapolis, MN 55415, who initially cooperated in investigating this complaint and who subsequently brought suit against the Department. Communications with the Department from complainant counsel (including next friends, survivors, or the estate of a complainant) are exempt from disclosure under Exemption 6, which protects the privacy of individuals from unwarranted public invasion. Disclosure of such materials would constitute an unwarranted invasion of privacy of the individual seeking redress from the government, and the invasion of privacy would be significant enough to discourage current complainants and future complainants from reporting complaints to the Office and assisting in investigations. Platintiff is of course free to inquire with counsel for decedent's estate regarding the records sought.

13. Medical materials relating to decedent's death at CR 7246 – 219 – CR 7246 – 350 and at CR 7246-660 – CR 7246-716.

The documents at CR 7246 – 219 – CR 7246 – 350 are an information request from the Office addressed to ICE asking for decedent's medical and autopsy records, and ICE's response to that request. ICE provided the records to the Office, which referred them back to ICE for processing under FOIA on December 19, 2008. ICE informed me in early May 2009 that the referral was apparently lost within the ICE information systems, thus I re-sent those materials were to ICE on May 12, 2009, and was informed by ICE that they are processing them for disclosure to Plaintiff under FOIA. These medical records and associated documents were referred to ICE because ICE obtained them pursuant to its rights under agreements with various health care providers and municipalities, so the decision to disclose or exempt the records from disclosure is within ICE's purview. The other medical records in possession of the Office for Civil Rights and Civil Liberties relating to decedent were provided by counsel for decedent's estate in counsel's communications at CR 7246-660 – CR 7246-716, discussed in Paragraph 12, *supra*. They are withheld under Exemption 6 to protect the privacy of communications between counsel for decedent's estate and survivor(s), and the Department. Release of those records would cause an unwarranted invasion of personal privacy of decedent and her survivors and estate as they seek redress against the Government. Because the privacy interests of the decedent's estate and survivors in the records Plaintiff has requested outweigh any minimal public interest in disclosure of the information, I determined that withholding the records was appropriate. Both the ICE-obtained medical records and the records provided by counsel were relied upon in creating the Expert Report and the Office' Recommendations and incorporated in those reports. The Office has no other medical records relating to decedent in its possession.

14. The initial complaint concerning treatment of decedent, CR 7246-718.

The initial complaint is withheld in part under Exemption 6 to protect the privacy of complainants. The Office for Civil Rights and Civil Liberties' policy is not to reveal the identifying data and the details of complaints because disclosure of personal identifying information, including allegations of violations of individual rights by DHS personnel, could chill future reporting of similarly situated complainants and bring unwanted notoriety to the current complainant. Moreover, the unwarranted invasion of complainant privacy by the public, or by individuals seeking to thwart the Office's investigations or other activities, would potentially deter the initial complainant in this case (who was not the decedent, her survivors or estate) with unwanted public notoriety and attention. Complainants may fear notoriety or reprisals if their complaints are made public. The privacy interest of complainants in the confidentiality of their communications with the Office outweighs the public's interest in knowing the details of a complaint, and strongly favors protecting individual privacy and exempting such materials from disclosure, particularly in the instant case where the basic allegations about DHS conduct have been a topic of public discussion. An email from a member of the public commenting on the allegations at CR 7246 – 725 is withheld for the same reasons; release would constitute an unwarranted invasion of privacy and unwelcome public notoriety, while no public interest is served by making public the personal identifying information and opinions of individuals who wish to express their opinion to the the Office for Civil Rights and Civil Liberties on a matter that has been discussed in media accounts and other public fora.

15.    CR 7246-789 is an internal critique soliciting recommendations from within the Office for Civil Rights and Civil Liberties to provide recommendations to ICE on how that agency could improve policy relating to the conduct of oversight investigations.

The content of the discussion is withheld pursuant to Exemption 5(Deliberative Process Privilege) as an internal communication of a candid nature stating concerns and soliciting frank opinions from other the Office personnel on how to proceed. The information is withheld

because release of this internal information would discourage the expression of candid opinions and chill the free and frank exchange of information among the Office's personnel in the future. Exemption 2(High) is also asserted because the release of the details of oversight investigations conducted by the Office, particularly limitations on the Office' jurisdiction and methods, could reveal details that those under investigation, in the future, could exploit. Exemption 2(High) protects information about internal agency policies and procedures where disclosure would risk circumvention of the agency's duties, thus this information was withheld. Exemption 7(E) is asserted over the body of the email because disclosure of the discussion in the email body would reveal constraints of the Office's investigations that could reasonably be expected to assist those under investigation to circumvent oversight in the future. Exemption 6 and 7(C) are asserted as to the individual personal identifying information of non-public DHS personnel mentioned in the body of the email, and in the message headers and signatures. The release of that information would not serve any meaningful public interest, and could in fact result in an unwarranted invasion of privacy by the mere association of those individuals with this investigation. Those portions of this communication that were reasonably segregable and not exempt from disclosure on other grounds were released to Plaintiff.

16. CR 7246-808 – 814: This string of emails is a discussion between the Office for Civil Rights and Civil Liberties and its attorneys, and ICE and its attorneys, concerning the Office's and ICE's legal authorities governing this and other oversight investigations.

Where Exemption 5(Deliberative Process Privilege) is asserted, it is asserted to exempt from disclosure discussion of possible courses for the Office to take during the course of its investigation. Where Exemption 5(Attorney-Client Privilege) is asserted, it is asserted to exempt from disclosure information conveyed in confidentiality to the Department's attorneys (whether embedded with the Office, ICE, or DHS headquarters) and professional legal advice given to their DHS clients (whether employed at the Office, ICE or elsewhere within DHS) regarding the

jurisdiction of the Office and ICE in certain investigations. Disclosing this information would impair the candid exchange of views between DHS personnel, and would tend to discourage them from seeking legal advice from DHS counsel. Exemptions 6 and 7(C) are asserted throughout the emails to exempt from disclosure the personal identifying information of non-public DHS personnel. Their privacy interests as non-public individuals outweighs any minimal public interest in disclosure, and it would be an unwarranted invasion of privacy to release that information and associate them with this investigation. Those portions of this communication that were reasonably segregable and not exempt from disclosure on other grounds were released to Plaintiff.

17.     CR 7246-818: Exemptions 6 and 7(C) are asserted throughout this email to exempt from disclosure the personal identifying information of non-public DHS personnel, and Exemption 6 is asserted one time to exempt from disclosure the personal identifying information and other private information, including medical information, of a person not the subject of the complaint investigation. Their privacy interests as non-public individuals outweigh any minimal public interest in disclosure. Moreover, it would be an unwarranted invasion of the privacy of DHS personnel to associate them with this investigation. Exemption 7(E) is asserted to exempt from disclosure materials reflecting the manner in which the Office for Civil Rights and Civil Liberties investigates complaints, because disclosure of those techniques and particularly disclosure of the limitations of the Office's jurisdictional reach could reasonably be expected to permit those against whom complaints are directed to evade oversight and accountability. CR 7241-825 is withheld for identical reasons, except no third party personal identifying information is contained within the body of that email.

18.     CR 7246-859 – CR 7246-868 a request for guidance by the Office for Civil Rights and Civil Liberties personnel addressed to Office leadership and the Office of Chief Counsel, dated January 20, 2007, regarding the status of the investigation and how to proceed.

The material includes summaries of the investigative progress, difficulties in the investigation, and factual materials relied on by the Office in drawing preliminary factual and legal conclusions to that point in the investigation, along with proposed correspondence with ICE that was never ultimately sent to ICE. This renders the material draft, pre-decisional and deliberative information, thus Exemption 5(Deliberative Process Privilege) is asserted because failure to protect blunt, pre-decisional, deliberative discussions of this nature would chill the expression of candid opinions by Office personnel and inhibit the free and frank exchange of information relating to civil rights and civil liberties compliance among agency personnel in the future. Exemption 5(Attorney-Client Privilege) is asserted because legal matters were discussed along with policy and factual issues. The privilege applies to facts divulged by a client to his attorney, and encompasses any opinions given by an attorney to his client based upon, and thus reflecting, those facts, as well as communications between attorneys that reflect client-supplied information. Thus the facts conveyed to the Chief Counsel, as well as legal questions and the responses of the Chief Counsel, are exempt from disclosure. The attorney-client privilege is not limited to the context of litigation. Exemption 7(E) is asserted to protect that information in the discussion that would convey the Office's investigative techniques and particularly limitations which would indicate weaknesses or limitations in the process, which could reasonably be expected to permit those under investigation by the Office in the future to circumvent the Office's statutory oversight and accountability activities. Exemptions 6 and 7(C) are asserted to protect the privacy information of non-public the Office and DHS personnel involved in discussion of the draft. The portions of this communication that were reasonably segregable and not exempt from disclosure on other grounds were released to Plaintiff.

19.     CR 7246-1033: This email is a communication between colleagues within the Office for Civil Rights and Civil Liberties summarizing internal deliberations on steps to take in several investigations.

The material is withheld under Exemption 2(High) and Exemption 7(E) for substantially the same reason: disclosure of the information would reveal aspects of the Office's investigations, particularly limitations of the Office's methods, that could reasonably be expected to assist those subjected to investigation to avoid oversight or accountability. Exemption 5(Deliberative Process Privilege) is asserted because the information relates to proposals for how to proceed in a number of investigations, and are a reflection of internal Office deliberations. Disclosure of this information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among Office personnel. If Office personnel are unable to speak candidly in internal deliberations, it would chill their ability to provide frank advice. To the extent material in this communication is not otherwise exempt from disclosure it was released to Plaintiff.

20. Legibility. The copies of documents provided were the best copies available. While many high quality copies were available from electronic files and provided to Plaintiff, some documents were only available in hard copy form, from the personal working files of the individuals who conducted the complaint investigation. The Office for Civil Rights and Civil Liberties made every effort with its photocopiers' image enhancement features and with Adobe Acrobat software to improve the appearance and legibility of the copies, but they could not be improved further at that time.

21. All reasonably segregable responsive information has been released to Plaintiff.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13th day of June, 2009.

James W. McNeely
FOIA Officer
Office For Civil Rights and Civil Liberties