THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | : | |
| AMERICAN CIVIL LIBERTIES UNION | : | |
| | : | Civil Action No. 08-1100 |
| | : | (RBW) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES DEPARTMENT OF | : | |
| HOMELAND SECURITY, et al. | : | |
| | : | |
| Defendants | : | |

**DECLARATION OF RUBY SHELLAWAY**

I, Ruby Shellaway, declare the following to be a true and correct statement of facts:

1)       I am an Attorney Advisor in the United States Department of Homeland Security ("DHS" or "the Department") Office of General Counsel, assigned to the Office for Civil Rights and

Civil Liberties ("CRCL"). I have been licensed to practice law in the State of Virginia since 2005.

2)      I am personally familiar with CRCL's policies and procedures to review and assess complaints against Department of Homeland Security employees and officials concerning violations of civil rights, civil liberties, and profiling on the basis of race, ethnicity, or religion. I also am familiar with plaintiff's Freedom of Information Act request in this case. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith. If called as a witness, I could testify competently as to the facts set forth in this declaration.

3)      CRCL is submitting this declaration in compliance with the Court's memorandum opinion and order of September 20, 2010. Pursuant to the terms of the Court's order, CRCL is providing the court with an explanation of CRCL's justification for redacting or withholding CRCL's "Case Opening Memorandum," "Investigator notes," "Final report," and "Expert report,"[1] in the Inamagua-Merchan investigation, subject to FOIA Exemptions 2, 5, and 6. CRCL is producing redacted versions of the "Case Opening Memorandum," "Investigator notes," "Final report." It is withholding the "Expert report" pursuant to the deliberative process privilege.

## CRCL Background and Investigations

4)      The Office for Civil Rights and Civil Liberties is directed by 6 U.S.C. § 345 and 42 U.S.C. § 2000ee-1 to ensure that civil rights and civil liberties are appropriately considered in

---

[1]      These documents are given the same name as they had in CRCL's original Vaughn Index

DHS activities. The Office's primary mission is to "assist the Secretary, directorates, and offices

of the Department to develop, implement, and periodically review Department policies and

procedures to ensure that the protection of civil rights and civil liberties is appropriately

incorporated into Department programs and activities." 6 U.S.C. § 345(a)(3). CRCL is invested

with similar responsibility under 42 U.S.C. § 2000ee-1.

5)      CRCL is divided into two parts: Equal Employment Opportunity Programs (EEO

Program), and CRCL Programs and Compliance. For the purposes of the documents at issue in

this case, the relevant part is CRCL Programs and Compliance.

6)      Within CRCL Programs and Compliance, the Compliance Section investigates

complaints from the public and provides policy advice to DHS components or offices (together,

"components") to ensure that DHS incorporates, throughout the Department, protections for

individual civil rights and civil liberties. The Compliance Section would have been responsible

for the investigation related to Ms. Inamagua-Merchan's death, and for the creation of the

documents at issue in the Court's September 20 memorandum opinion.

7)      The authority for CRCL Compliance Section investigations is provided by 6 U.S.C.

§ 345, which directs CRCL to:

> (1) review and assess information concerning abuses of civil rights, civil liberties,
> and profiling on the basis of race, ethnicity, or religion, by employees and officials of the
> Department ...
>
> (6) investigate complaints and information indicating possible abuses of civil
> rights or civil liberties ....

6 U.S.C. § 345(a).

8)      CRCL Compliance Section investigations involve review of the underlying factual allegations, as well as a broader review of the legal and policy contexts in which an alleged incident occurred.  The primary purpose of the investigation is to recommend policies that effectively protect individual civil rights and civil liberties.  In order to recommend and develop policies, the Compliance Section conducts a detailed inquiry into the relevant component's regulations, policies and practices.

9)      Investigative techniques used by Compliance Section include interviews, document reviews, review of legal and policy positions, record checks conducted with the assistance of other agencies, and other activities as appropriate.

    a)      CRCL Compliance investigators and policy analysts (together, "investigators") interview line personnel, managers, and leaders to gather candid opinions about factual allegations, existing policy, and potential policy improvements.

    b)      CRCL Compliance investigators may accompany sworn law enforcement officers and assist in joint interviews of persons of interest to an investigation.

    c)      CRCL Compliance Section consults with subject matter experts on investigations that require particular skills, such as investigations related to detainee medical care.  The experts review relevant record and policies, and advise CRCL Compliance on the validity of factual allegations, as well as potential improvements to related policies.

10)     While Compliance investigators have expertise in their own fields, they rely on the willingness of DHS personnel interviewed and consulted, as well as other experts, to provide candid opinions in order to formulate workable policy suggestions that would improve DHS's protection of civil rights and civil liberties.

4

11)    Attorneys from the Office of the General Counsel ("OGC"), who serve CRCL as their client office, support Compliance investigators and policy analysts throughout the investigative process. The attorneys assist in drafting key documents, provide legal opinions on underlying substantive legal issues, and advise Compliance personnel on legally sensitive portions of investigations.

12)    When CRCL Compliance Section completes an investigation, CRCL issues a memorandum in which it provides any recommendations that it may have to the relevant DHS component. If CRCL finds that there are no grounds to suggest changes in policy, the memorandum makes no recommendations to the component.

13)    When a CRCL Compliance investigation finds that a DHS element could improve its practices for protecting civil rights or civil liberties, the Compliance Section issues a memorandum that makes recommendations to the DHS component (e.g., Immigration and Customs Enforcement, Customs and Border Protection, Citizenship and Immigration Services) regarding suggested changes. The Office of the General Counsel reviews, revises and approves all such memoranda before the memoranda can be released to the relevant components.

14)    Once CRCL Compliance issues the memorandum making policy recommendations to a DHS component, the component may determine whether to implement the recommendations or not. The component is free to ignore the recommendations. If the component decides to implement the recommendations, it must take affirmative steps to make the changes. If the component does not take any such affirmative steps, and opts not to implement the recommendations, the CRCL recommendations will not affect any change in DHS policies or procedures.

**CRCL Documents**

15)     The goal of Compliance Section investigations is to improve DHS's policies and

procedures, and their implementation, in order to best protect civil rights and civil liberties.  As a

result, CRCL frequently drafts, requests, or receives materials that would be privileged, in whole

or in part, against disclosure in civil litigation.  Compliance Section personnel may also

participate in discussions with DHS components regarding pre-decisional policy deliberations

relevant to complaint allegations.  DHS investigators frequently create and collect information

that includes impressions and opinions – including speculation, hypothetical discussions and

other pre-decisional deliberations – from operational DHS personnel, management, experts, and

counsel.  CRCL's privileged materials thus include pre-decisional materials and deliberations

and attorney-client communications. CRCL is also frequently privy to internal Department

policies and procedures and to information that is otherwise-protected as private (such as

medical records).

*Opening Memorandum*

16)     At the beginning of each complaint investigation, CRCL staff, with review and input

from the Office of the General Counsel, prepare an opening memorandum for the complaint.

17)     The opening memorandum provides notice from CRCL and OGC to the relevant

component or office at DHS that a complaint has been filed with CRCL regarding the office or

component.

18)     The opening memorandum contains several sections.

19)     The first section of the opening memorandum informs the relevant office or component about CRCL's mission and CRCL's authority to conduct investigations of allegations regarding abuses of civil rights, civil liberties, and racial, religious, and ethnic profiling.

20)     The second section of the opening memorandum reviews the allegations from the complainant, but may also include information that CRCL has received, regarding the complaint, from other sources prior to drafting the opening memorandum and that CRCL analysts feel may be pertinent to the investigation.

21)     The third section of the memorandum reflects CRCL's initial position, after consultation with counsel and based on limited preliminary information, regarding the key civil rights and civil liberties issues presented by the complainant's allegations.  This section explicitly reflects CRCL's deliberations, at an investigation's inception, as to how to contour the investigation.  In addition, while this section reflects the issues that CRCL initially determines to be central to the complaint, CRCL may determine, during the course of the investigation, that it is appropriate for CRCL to pursue other avenues of inquiry.  Disclosure of the issues CRCL discussed at an investigation's opening stages may chill CRCL's ability to respond in a flexible manner to later-discovered facts and issues.

22)     The fourth section provides the initial contact person for the investigation and lays out initial steps to be taken by the recipient DHS component.

23)     The Office of the General Counsel reviews, and advises on, all sections of the opening memorandum.  Of particular importance, OGC helps CRCL to determine the key legal issues and questions presented for a given complaint.

24)     For the investigation regarding Ms. Inamagua-Merchan's death, CRCL is producing a
redacted version of the opening memorandum. The redacted information is material protected
under FOIA exemptions 5 and 6. It is material that reflects pre-decisional thoughts and opinions
from the deliberative process, attorney-client privilege as well as personal information protected
for privacy reasons. The personal information consists of information identifying non-public
figures and personnel contact information that is not widely publicly available.

*Investigator Notes*

25)     Each complaint that CRCL undertakes to investigate is assigned to at least one CRCL
Compliance Section investigator.

26)     These investigators interview line personnel, managers, and leaders to gather candid
opinions about factual allegations, existing policy, and potential policy improvements. CRCL
investigators are frequently privy to: internal policies and procedures; personal information
otherwise protected by privacy concerns; personnel disciplinary matters; and ongoing policy
debates, discussions, and deliberations. All of these materials may be included in their notes.
Investigator's notes frequently reflect a heavy integration of selected factual information and
deliberative comments and concerns. The interwoven information comes from the investigator,
as the investigator works through the issues in a given complaint, or may reflect the concerns and
analysis of others contacted during the investigation. In either situation, however, the factual
information cannot easily be separated from the deliberative thought processes, and the selection
of the specific facts themselves involves the deliberative process of those involved.

27)    Investigators' notes may also reflect, as the investigation progresses, the evolution of the CRCL Compliance Section's thoughts about how to approach the investigation, which issues are of central concern, and which policies require review for a particular complaint.

28)    For the investigation regarding Ms. Inamagua-Merchan's death, CRCL is producing a redacted version of the investigator's notes.  The redacted information is material protected under FOIA exemptions 5 and 6.  It is material that reflects internal pre-decisional deliberative materials, including thoughts and opinions from interviewees and CRCL staff, and personal information protected for privacy reasons. The personal information consists of information identifying non-public figures, personnel contact information that is not widely publicly available, and personal medical records.

*Expert Report*

29)    CRCL investigators frequently consult with subject-matter experts.  While Compliance investigators have expertise in their own fields, in areas such as medical care, CRCL investigators often request and reference the analysis and recommendations of a subject matter expert.  In a given investigation, an expert will review relevant records, policies, and practices, and will then advise CRCL Compliance Section on the validity of factual allegations and potential improvements to relevant policies.

30)    Expert reports are drafted purely for CRCL's internal deliberative process.  Experts provide their reports and comments to the Compliance Section investigator handling a particular complaint for the investigator's consideration before CRCL reaches any final conclusions about the issues in a case.

31)    The vast majority of the pages in an expert report are personal medical records that are protected under the privacy exemption (Exemption 6) from disclosure under FOIA. The remainder of the expert report is the expert's analysis of certain selected factual information. Experts typically draft their analysis by integrating carefully culled facts from the medical records and underlying complaint with the expert's reflections on possible policy concerns. Because the expert's analysis is dependent upon and interwoven with the facts that the expert has selected from the bulk of the underlying records, it is not possible to disclose the factual aspects of the expert's report without also disclosing the expert's deliberative thought processes regarding the investigation.

32)    The expert report will contain the expert's observations and recommendations regarding any weaknesses in DHS policies or procedures that CRCL might address. The Compliance Section investigator and the investigator's supervisors then consider the report, along with all other information collected during the investigation, before determining what next steps CRCL will take with regard to the complaint. The expert report is an internal CRCL document, commissioned and drafted solely to assist CRCL investigators and their supervisors in their decision-making process regarding a particular complaint and the related DHS policies.

33)    For the investigation regarding Ms. Inamagua-Merchan's death, CRCL is withholding the expert report under FOIA exemption 5, pursuant to the deliberative process privilege, and Exemption 6, as described in paragraph 31 above.

*"Final Report"/Recommendations Memorandum* [2]

---

[2]    Although this document was labeled "Final report" in the original Vaughn index, it is not, within CRCL, referred to or labeled as a "final report."

34)    At the time of the Inamagua-Merchan investigation, when CRCL concluded an investigation, it would issue a memorandum discussing the results of the investigation and making recommendations for the final decision-maker, which was not CRCL. The memorandum was drafted by CRCL staff with the assistance and advice of counsel. The memorandum was directed to the heads of the relevant DHS components and their counsel.

35)    The memorandum in which CRCL could make recommendations contained several sections.

36)    The initial section of the memorandum discussed the purpose of the investigation, including the specific questions investigated and a summary conclusion.

37)    The second section of the memorandum discussed the background of the investigation, including information on the complaint allegations and the steps CRCL took to investigate the complaint.

38)    The third section of the memorandum provides to the DHS component, in a candid manner, CRCL's analysis regarding the complaint's allegations. Although this section may contain some factual information, the facts are carefully selected by CRCL and OGC to illustrate the issues or concerns CRCL has raised with the component. The factual information is woven throughout CRCL's deliberative analysis. The factual information in this section is so closely tied to this analysis, and highly reflective of it, that it is not possible to reveal the factual information CRCL includes in its discussion without also revealing CRCL's deliberative analysis.

39)    In cases involving an expert report, the discussion will frequently quote key language from the report's analysis of the issues involved in order to inform the DHS component's

understanding of the investigation. In addition, the discussion reflects CRCL's frank assessment of any deficiencies in policies or procedures at the DHS component that CRCL uncovered during the course of its investigation. An effective discussion section rests heavily on a precise factual and legal parsing of the key allegations; OGC is thus heavily involved in drafting the discussion section of the memorandum.

40)    The fourth section of the memorandum provides to the DHS component the recommendations CRCL has, if any, for improvements in policies and procedures that would allow the component, and thus DHS, to better protect civil rights and civil liberties. If, after completing an investigation, CRCL has no recommendations for improvements to policies and procedures, this section simply reflects that CRCL has no recommendations, based on the complaint and investigation, to make to the component. If CRCL does have recommendations, the section provides those recommendations. OGC provides significant counsel to CRCL regarding whether there are legal grounds, as well as policy ones, for making recommendations to the component. If such recommendations are to issue from CRCL, OGC reviews and revises the recommendations as necessary to ensure compliance with existing law.

41)    CRCL has no authority to oblige a DHS component to adopt any or all of the recommendations. Once CRCL has delivered the recommendations memorandum to the relevant DHS component, the DHS component is the entity which must decide whether or not to implement the recommendations. The recommendations are just recommendations – the component is free to accept or reject them as it will.

42)    At the time that CRCL completed its investigation of Ms. Inamagua-Merchan's death, CRCL did not track whether, once it issued its recommendations memorandum, the component

chose to act upon its recommendations.  However, CRCL's memorandum did contain certain

recommendations.  With respect to this recommendation memorandum regarding Ms. Inamagua-

Merchan, the relevant component, Immigration and Customs Enforcement Detention and

Removal Operations, did choose to provide a response to CRCL, indicating that it would modify

and accept some of CRCL's recommendations, but had concerns about and would not implement

others.

43)     For the investigation regarding Ms. Inamagua-Merchan's death, CRCL is producing a

redacted version of the recommendations memorandum ("Final report").  The redacted

information is material that is protected under FOIA exemptions 2, 5, and 6.  It is material that

reflects internal policies and procedures, pre-decisional deliberative materials (including excerpts

of the withheld expert's report, and candid assessments and opinions from CRCL staff),

attorney-client privilege, and personal information protected for privacy reasons.  The personal

information consists of information identifying non-public figures, personnel contact information

that is not widely publicly available, and personal medical records.

44)     The information described herein has been carefully reviewed to ensure that all

reasonably segregable information has been released to the Plaintiff.

> I declare under the penalty of perjury that the foregoing is
> true and correct to the best of my knowledge and belief.
>
> Ruby Z. Shellaway
>
> Date:  December 20, 2010      12/20/2010